**Hughes Anderson BAGLEY, Jr.,**
**Plaintiff–Appellant,**

v.

**CMC REAL ESTATE CORPORATION,**
**aka Chicago, Milwaukee, St. Paul &**
**Pacific Railroad; Donald E. Mitchell;**
**Norman W. Prins, Defendants–Appel-**
**lees.**

**No. 89–35870.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 6, 1990.

Decided Jan. 22, 1991.

Hughes Anderson Bagley, Jr., Sioux City, Iowa, in pro. per.

James C. Fowler, Graham & Dunn, Seattle, Wash., for defendant-appellee CMC Real Estate.

Before TANG, NELSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Hughes Bagley appeals the district court's order granting judgment on the pleadings to all defendants in his civil rights action filed pursuant to 42 U.S.C. §§ 1983 and 1985 and *Bivens v. Six Unnamed Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Bagley challenges only the district court's rulings that his § 1983 claim was barred by the statute of limitations and that he failed to state a cause of action under § 1985. We affirm.

BACKGROUND

Defendants James O'Connor and Donald Mitchell were state law enforcement officers also employed as security officers by the Chicago, Milwaukee, St. Paul & Pacific Railroad Company ("Milwaukee Road"). Defendant Norman Prins is an agent for the Bureau of Alcohol, Tobacco and Firearms ("BATF"). Defendants CMC Real Estate Corp. ("CMC") and the Soo Line Railroad ("Soo") are successors in interest to the Milwaukee Road, having been created pursuant to Milwaukee Road's reorganization proceedings.

Between April and June 1977, O'Connor and Mitchell, with the approval of the Milwaukee Road, assisted Prins in an undercover investigation of Bagley. As a result of this investigation, Bagley was indicted on 15 counts of violating federal narcotics and firearms statutes. O'Connor and Mitchell were the government's two principal witnesses. Prior to his trial, Bagley filed a discovery motion requesting that the government disclose the names of all its witnesses and any inducements made to them in exchange for their testimony. In response, the government provided affidavits from O'Connor and Mitchell, each of whom stated that he had neither received nor expected compensation for his services. In fact, however, Prins had informed O'Connor and Mitchell that he would pay them "expense money" in exchange for their investigatory services. Moreover, O'Connor and Mitchell had entered a written agreement with the BATF pursuant to which they received compensation for their assistance in the investigation.

At trial, O'Connor and Mitchell testified about both the firearms and the narcotics charges. The court found Bagley guilty on the narcotics charges, but not guilty on the firearms charges, and sentenced him to six months in prison and five years probation.

In May 1980, while in prison on other charges, Bagley filed requests for information pursuant to the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552 and 552a. Through this inquiry, he learned that O'Connor and Mitchell had received compensation for their assistance in the investigation. In 1982, Bagley filed a motion under 28 U.S.C. § 2255 to vacate his narcotics conviction. On appeal of the denial of that motion, we reversed Bagley's conviction, holding that the government's failure to provide the requested information restricted Bagley's right to a fair trial. *Bagley v. Lumpkin*, 719 F.2d 1462 (9th Cir.1983). The Supreme Court reversed and remanded the case "for a determination whether there [was] a reasonable probability that, had the inducement offered by the Government to O'Connor and Mitchell been disclosed to the defense, the result of the trial would have been different." *United States v. Bagley*, 473 U.S. 667, 684, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985). On September 2, 1986, we found that the government's failure to disclose material impeachment evidence undermined confidence in the outcome of the trial and reversed Bagley's 1977 conviction.

*Bagley v. Lumpkin,* 798 F.2d 1297 (9th Cir.1986).

Bagley filed the present action on August 18, 1988. The complaint alleged that Prins, O'Connor and Mitchell conspired to violate Bagley's constitutional rights to due process and to confront witnesses against him. Bagley sought damages in excess of $100 million for his wrongful conviction and imprisonment, and the deprivations that accompanied that imprisonment.

Mitchell and Prins moved for judgment on the pleadings, asserting that this action is barred by the statute of limitations and that the complaint fails to state a prima facie case under section 1985.[1] In addition, Mitchell filed a motion for summary judgment asserting that the *Brady* claim raised in the complaint is inapplicable to him. Magistrate John L. Weinberg issued a Report and Recommendation in which he concluded that judgment on the pleadings should be granted for all defendants. He determined that the statute of limitations on the § 1983 and *Bivens* claims was three years, Wash.Rev.Code § 4.16.080(2); that Bagley's cause of action accrued in May of 1980; that the statute of limitations was tolled until Bagley was released from prison in 1982; that the pendency of Bagley's habeas corpus proceedings did not toll the statute of limitations or delay accrual of Bagley's claims; and that the claims became barred by limitations in 1985. The Magistrate also concluded that Bagley's § 1985 claim should be dismissed because the statute of limitations had expired and because Bagley failed to allege that he is a member of a protected class. Given this recommendation, the Magistrate did not rule on Mitchell's Motion for Summary Judgment. The district court adopted the Magistrate's Report and Recommendation in its entirety and granted all defendants judgment on the pleadings. Bagley now appeals.

STANDARD OF REVIEW

We review de novo a judgment on the pleadings. *See McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 810 (9th Cir.1988). Judgment on the pleadings is proper when it is clearly established that there are no issues of material fact, and the moving party is entitled to judgment as a matter of law. *Id.* We accept all allegations of fact by the party opposing the motion as true, and construe those allegations in the light most favorable to that party. *Id.*

DISCUSSION

A. Statute of Limitations

42 U.S.C. § 1983 does not contain its own statute of limitations. Consequently, we apply the statute of limitations for an analogous cause of action under Washington state law. *Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980). We have held that the appropriate statute of limitations in a § 1983 action is the three-year limitation of Wash.Rev.Code § 4.16.080(2). *Rose v. Rinaldi,* 654 F.2d 546, 547 (9th Cir.1981). We have also held that this section applies to *Bivens* claims arising in Washington. *See Johnston v. Horne,* 875 F.2d 1415, 1424 (9th Cir.1989).

■ The dispute here is whether Bagley's claim accrued in 1980 when he first learned that O'Connor and Mitchell had in fact been promised compensation for their participation in the investigation, or in 1986 when Bagley's conviction was finally put to rest. Bagley argues that because he had no cognizable, compensable injury until his unconstitutional 1977 conviction was finally reversed in 1986, his cause of action did not accrue until that time. There is some appeal to this argument. Nevertheless, precedent compels us to reject this theory.

Federal law determines when a cause of action accrues and the statute of limitations begins to run for a § 1983 claim. *Norco Construction, Inc. v. King County,* 801 F.2d 1143, 1145 (9th Cir.1986). A federal claim accrues when the plaintiff " 'knows or has reason to know of the injury which is the basis of the action.' " *Id.* (quoting *Trotter v. International Longshoremen's & Warehousemen's Union,* 704 F.2d 1141, 1143 (9th Cir.1983)). The second circuit, addressing an issue very similar to the one before us here, held

---

1. Defendant O'Connor has not yet been served because Bagley has been unable to locate him.

that a plaintiff's § 1983 action accrues when he is incarcerated following a deprivation of his constitutional rights at trial. The court further held that the statute of limitations on that action begins to run upon incarceration notwithstanding the pendency of further state court proceedings. The court concluded, therefore, that the civil rights action should be stayed, rather than dismissed, in order to preserve it through the termination of the state court appeal. *See Mack v. Varelas,* 835 F.2d 995, 1000 (2d Cir.1987).[2]

Other circuits, as well as our own, have implicitly held that habeas corpus proceedings do not delay accrual of § 1983 claims. In *Young v. Kenny,* 907 F.2d 874 (9th Cir.1990), for instance, the plaintiff filed a § 1983 action alleging that Washington state officials had unconstitutionally failed to apply good time credits to his prison sentence. The district court dismissed the complaint, holding that a habeas corpus petition, rather than a civil rights suit, was the appropriate procedure for challenging the length of the prison sentence. We reversed and ordered that the § 1983 action be stayed, not dismissed, until the plaintiff had exhausted his state remedies. We reasoned:

> Dismissal ... could be an unnecessarily harsh method of resolving the tension

between section 1983 and the habeas exhaustion requirement. Exhaustion of state remedies is a process that may take years to complete; it is not farfetched to contemplate that a prisoner may be unable to exhaust state remedies before the limitations period expires on his section 1983 claim. Accordingly, district courts in some circuits stay, rather than dismiss, section 1983 complaints in this posture. [citations omitted]. This is a wise policy; ...

*Id.* at 878. Thus, we necessarily contemplated that the civil rights claim had accrued and the limitations period had begun to run despite the pendency of a habeas corpus action. *See also, Offet v. Solem,* 823 F.2d 1256, 1258 n. 2 (8th Cir.1987); *Spina v. Aaron,* 821 F.2d 1126, 1128–29 (5th Cir.1987); *Bailey v. Ness,* 733 F.2d 279, 283 (3d Cir.1984); *Richardson v. Fleming,* 651 F.2d 366, 375 (5th Cir.1981); *Conner v. Pickett,* 552 F.2d 585, 587 & n. 1 (5th Cir.1977).[3] Moreover, there appear to be no cases holding that a civil rights claim does not accrue until habeas corpus proceedings have ended.

In view of all of this precedent, we make explicit the implicit ruling of *Young,* and hold that Bagley's § 1983 and *Bivens* actions accrued for statute of limitations purposes when he first learned of the injury

---

**2.** There is also an analogous case from the Eastern District of Pennsylvania. In *Drum v. Nasuti,* 648 F.Supp. 888 (E.D.Pa.1986), *aff'd,* 831 F.2d 286 (3d Cir.1987), the court dismissed a § 1983 action because the statute of limitations expired during the pendency of the plaintiff's criminal appeals. The plaintiff in *Drum* filed a § 1983 action alleging that the defendants had committed perjury in his trial. The court, using the same standard for determining the accrual date for a cause of action as this court uses, held that the claim accrued at the time of trial when the plaintiff knew that the defendant had committed perjury. Addressing an argument similar to that made by Bagley, the court stated:

> ... I must reject plaintiff's argument that his claim was not ripe until the Court of Appeals denied his appeal from his criminal contempt conviction.... [T]he last act which Drum complains of causing his injury would have been *during* his criminal contempt proceedings ... when he "knew" from [defendant's] testimony of the conspiracy he claims. It was then that the statute of limitations accrued.

*Id.* at 903 (emphasis in original).

The court also rejected an argument that the criminal appeal tolled the statute of limitations:

> Nor can plaintiff argue that the reason he failed to file his § 1983 action was that the same issues were pending in another proceeding. [citations omitted]. Rather, in such a situation the Court would stay the civil rights proceeding until the criminal proceedings had run their course.... Thus, the statute of limitations ... bars plaintiff's claims.

*Id.* at 903–04.

**3.** In a different but somewhat analogous context, the Supreme Court held that commencement of agency proceedings under Title VII, 42 U.S.C. §§ 2000e *et seq.,* did not toll the limitations period for a claim brought under 42 U.S.C. § 1981 challenging the same conduct. The Court suggested as a possible solution "that the plaintiff in his § 1981 suit may ask the court to stay proceedings until the administrative efforts at conciliation and voluntary compliance have been completed." *Johnson v. Railway Express Agency,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1975).

giving rise to his claims, and not at the completion of his habeas corpus proceeding.

This holding is consistent with the policy underlying statutes of limitations. "Statutes of limitations ... represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979) (quoting *Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)). Bagley knew of his claim eight years before he filed it. During that time, none of the defendants knew that Bagley contemplated bringing a claim against them and neither CMC nor Soo, as successors to the Milwaukee Road, had any knowledge of the facts giving rise to the claim. The defendants could take no steps to preserve evidence; the likelihood of their being prejudiced by the delay is great.

Bagley argues that it will aid judicial economy to forestall the filing of civil rights actions until completion of habeas proceedings; if the petitioner is unsuccessful in habeas, he will not file the civil rights claim. The argument is not without appeal, but the price of delay is too high. The judiciary can economize its resources by staying the civil rights action until habeas proceedings are complete. Moreover, Bagley's approach might extend limitations indefinitely, since habeas petitions are free of limitations.

■ We conclude, then, that Bagley's civil rights claims accrued in May 1990, when he learned of his injury. The statute was tolled, however, because the claims accrued while he was in prison, *see* Wash. Rev.Code § 4.16.190, but limitations began to run on July 9, 1982 upon his release. Thus, Bagley had until July 9, 1985 to bring this action.[4] Bagley missed this deadline so his civil rights claims are now time-barred.

### B. Collateral Estoppel

■ The district court originally held that the government's failure to disclose that O'Connor and Mitchell had been compensated for their efforts in the investigation was harmless error. Bagley claims that he could not possibly have brought his civil rights action before his conviction was reversed because he was collaterally estopped by this harmless error ruling from claiming that the defendants here had violated his constitutional rights. We disagree. A plaintiff may be estopped from bringing a civil action to challenge an issue which was "distinctly put in issue and directly determined" in a previous criminal action. *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568–69, 71 S.Ct. 408, 413–14, 95 L.Ed. 534 (1951); *McNally v. Pulitzer Publishing Co.*, 532 F.2d 69, 76 (8th Cir.), *cert. denied*, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976). The issue in this case, however, is different from the issues presented in Bagley's criminal trial. In the previous trial, Bagley attacked the constitutionality of his conviction in light of the government's failure to disclose the requested impeachment evidence. Here, Bagley challenges for the first time the conduct of O'Conner, Mitchell and Prins as individuals, on the ground that they violated his constitutional rights. If these individuals violated Bagley's constitutional rights under color of state or federal law, his civil rights claim would not be totally defeated even if the officers' misconduct was harmless in his criminal trial. In any event, Bagley could have filed his civil rights action within the limitations period and then asked the district court to stay that action pending the outcome of his habeas petition. Once his conviction was reversed, there could have been no collateral estoppel effect of any kind on his civil rights claims.

---

**4.** In 1984, Bagley was again imprisoned upon his conviction in Iowa state court for violating marijuana laws. Under Washington law, Bagley's return to prison did not "retoll" the statute.

Once the statute begins to run, no subsequent disability will toll it. *See Pedersen v. Dept. of Transportation*, 43 Wash.App. 413, 422, 717 P.2d 773 (1986).

## C. The Section 1985(2) Claim

 Bagley argues further that the district court erred in rejecting his claim under 42 U.S.C. § 1985(2). One of the bases of the district court's ruling was Bagley's failure to allege the required class-based animus. Bagley recognizes that only members of a protected class can state a claim under § 1985(3). *See Griffin v. Breckenridge,* 403 U.S. 88, 103, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). He suggests, however, that the Supreme Court held in *Kush v. Rutledge,* 460 U.S. 719, 724–727, 103 S.Ct. 1483, 1486–88, 75 L.Ed.2d 413 (1983), that a showing of class-based animus is not required to allege a claim under § 1985(2). This reliance on *Kush* is misplaced.

Section 1985(2) has two separate parts.[5] *See Kush,* 460 U.S. at 724–25, 103 S.Ct. at 1486–87. The first part of the subsection addresses conspiracies "which deter by force, intimidation, or threat a party or witness in federal court." *Bell v. City of Milwaukee,* 746 F.2d 1205, 1233 (7th Cir. 1984). The second part of the subsection creates a federal right of action for damages against conspiracies which obstruct the due course of justice in any State or Territory with intent to deny equal protection. *See Id.* It is clear from the complaint that Bagley is asserting a cause of action for conspiracy pursuant to the second part of § 1985(2).[6] The Court in *Kush* held only that the first part of § 1985(2) does not require a showing of class-based animus. 460 U.S. at 726, 103 S.Ct. at 1487. It did not address whether the second part of § 1985(2) requires such a showing. We have held, however, that "[a] cognizable claim under [the second part of § 1985(2) ] requires an allegation of a class-based, invidiously discriminatory animus." *Phillips v. Bridgeworkers Local 118,* 556 F.2d 939, 940–41 (9th Cir.1977); *see also Rutledge v. Arizona Board of Regents,* 660 F.2d 1345, 1355 (9th Cir.1981).

Bagley failed to assert his membership in a protected class or any denial of equal protection. The district court properly rejected Bagley's § 1985 claim.[7]

AFFIRMED.

---

5. Section 1985 provides, in relevant part:

(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; [and]

....

(3) ... do ... any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

6. Paragraph 61 of the complaint states:

The conspiracy to violate Plaintiff's Constitutional rights to Due Process and Confrontation of witnesses guaranteed by the Fifth And Sixth Amendments to the United States Constitution ... is actionable as a violation of Title 42 U.S.C. § 1985, *which prohibits two or more persons from conspiring to hinder or obstruct or defeat the due course of justice with intent to deny any citizen equal protection of the laws.* (emphasis added).

7. The district court also reasoned that its ruling on this issue was proper because the second part of § 1985(2) applies only to actions in state court and because the claim was barred under the statute of limitations. Because of our disposition of this issue, we need not address these points here.